Our next case for argument is Kuykendoll v. Saul. Mr. Forbes. Yes, Your Honor. Thank you. My name is Randall Forbes. I represent the Social Security Disability Claimant, or the Appellant. The standard of review is substantial evidence, and whether or not the proper legal criteria are met pursuant to Shakespeare, Barnhart, and a wealth of other cases, Your Honor. However, in this case, substantial evidence does not support the decision because key supported limitations have been left out of the RFC, and those limitations are harmful. And also- Left out of what? What's that? That's what I was asking you. Have been left out of what? The residual functional capacity binding. Yes, if you would use words, that would help. Okay. I will. I will try. It's hard for us Social Security attorneys. I know, but one of the important, central points of appellate advocacy is that you may be a specialist, but we are not. I understand, Your Honor. The second reason that the substantial evidence standard is not met is because we have a treating physician specialist opinion in the record which supports limitations that are work preclusive. And this case is one of several cases that have come through this court in the last year in relation to concentration, persistence, or pace limitations and how that should be interpreted. The dominant case law culminates in the Yerk case and also the Crump case. The exception case law, which is recent and mostly argued in non-precedential opinions, but the main case, I believe, is the Joseph case, basically says that if there's no evidence backing up the limitation and substantial evidence supports the ALJ's decision, then claim it loses. I argued the Crump case. I believe this case is very similar to that and a comparison of the two should lead to the same result and that is a decision in favor of the disability claimant. This case, in one sense, is stronger than Crump because we do have physician opinions and those physician opinions do cover limitations that are important. The first physician opinion is February 24, 2015. It's not as thorough as the second treating specialist opinion on February 29, 2016, but it has in it expected to miss four days or more work a month, expected to fail to complete task in a timely manner for one or more hours of an eight-hour workday on a chronic basis. Those are specific limitations by the treating specialist who has at least a two-year treating history with this claimant. He's at the top of the medical expert pyramid, in other words, you've got the treating specialist with a long history, then you've got non-examining consultants at the bottom. You can't throw the guy up at the top out if the treatment records and his specialty back him up and that's what has happened here. That's all I have right now, Your Honor. I'd like to reserve the rest of the time for rebuttal. Certainly, Counsel. Thank you. Mr. Winsley. Good morning, Your Honors. I'm Jay Hinesley and I represent the Commissioner in this case. ALJ's decision in this case is supported by substantial evidence and should be upheld. The main issue Mr. Kuykendall raises, which is the concentration, persistence, or pace, and after this I'm going to call it CPP just to make it a little easier. It's not a new issue to this court. In a line of recent cases on this issue, the court has made it clear that the rules pertaining to moderate limitations in CPP are not static. Moderate limitations in what? Concentration, persistence, or pace. If you would use real words, that would help us generalists. Absolutely, Your Honor. I was abbreviating that. No more acronyms. Understood. The rules pertaining to moderate limitations in concentration, persistence, or pace are not static, as Mr. Kuykendall would lead this court to believe. This court has held that no magic words are needed to accommodate moderate limitations in concentration, persistence, or pace. Instead, an ALJ must look to the evidence in each case. Indeed, this court has held that even generic limitations, such as limiting a claimant to repetitive tasks, may properly accommodate moderate limitations in concentration, persistence, or pace as long as they adequately account for the claimant's demonstrated psychological symptoms found in the record. In this case, the ALJ's RFC, residual functional capacity, determination, sufficiently addressed how Mr. Kuykendall's moderate limitations in concentration, persistence, or pace affected his ability to stay on task, and the evidentiary record did not warrant limitations exceeding those contained in the ALJ's hypothetical to the vocational expert. With little to no actual evidence of limitations, Mr. Kuykendall is asking that this court improperly reweigh the evidence. There is much evidence that supports the ALJ's residual functional capacity determination in this case. For example, Mr. Kuykendall's counselor, Mark Snell, indicated that Mr. Kuykendall's memory was intact in all areas. Similarly, a consultative physician observed that Mr. Kuykendall's memory for recent and remote medical events was preserved, and his intellectual function was grossly normal. A consultative psychologist, Dr. Hirschberger, similarly noted that Mr. Kuykendall's attention and concentration appeared fair to good, and his stream of thought was both logical and goal-directed. In discussing the notes of Dr. Platt, who was Mr. Kuykendall's treating psychiatrist, the ALJ noted the observation that Mr. Kuykendall was alert, oriented times three, had fair recent and remote memory, and appeared to be of average intellect. The ALJ, the Administrative Law Judge, was explicit in his rationale. At step three, the Administrative Law Judge noted that Mr. Kuykendall handled his own medical care, administered his own medications, took care of his ailing mother, took her to appointments, he was able to use a CPAP machine, and drove a car. He was able to provide a detailed history of his impairments and numerous medications. He followed simple instructions at an examination, and he was able to understand and follow home exercise programs and medication information. Oakland mental health care providers generally noted that his attention and concentration were within normal limits. In his decision, the Administrative Law Judge specifically indicated that he limited Mr. Kuykendall's difficulty with understanding, remembering, and carrying out detailed instructions. The Administrative Law Judge also limited him to simple work-related decisions in an effort to avoid stress, anger, and irritability towards others. Accordingly, Your Honors, the ALJ limited Mr. Kuykendall to simple routine work tasks with simple work-related decisions. The ALJ's finding was also fully consistent with the state agency psychologist who reviewed the records at the initial and reconsideration levels of review. Recent cases from this court support our argument today. In Josephic, which counsel referred to, the residual functional capacity assessment in that case was for simple routine repetitive tasks requiring no more than occasional contact with supervisors and coworkers, no contact with the public, and an assigned work area at least 10 to 15 feet away from coworkers. And this was in conjunction with moderate limitations in concentration, persistence, or pace. This court saw no error in the Administrative Law Judge's residual functional capacity assessment because she considered all the limitations that were supported by the record evidence. Similarly, in Saunders, this court stated that the claimant never once has told us what other restrictions the Administrative Law Judge should have included in her hypothetical. In Pitlewski, the court found that the ALJ properly tied the residual functional capacity to the evidence in the record by limiting him to simple routine and repetitive tasks and simple work-related decisions with occasional interaction with others. And finally, in Urbanic, the court stated that even generic limitations, such as limiting a claimant to simple repetitive tasks, may properly account for moderate limitations in concentration, persistence, or pace as long as they adequately account for the claimant's demonstrated psychological symptoms. These cases, Your Honors, provide examples of this court's refusal to apply a categorical rule in every concentration, persistence, and pace case. Because this case is distinct with an evidentiary record that diverges from a typical concentration, persistence, and pace case, different rules should apply. Respectfully, Your Honors, Mr. Kuykendall's biggest hurdle in this case involves his inability to answer a basic question. What evidence supports greater limitations than those adopted by the Administrative Law Judge? Mr. Kuykendall is unable to direct this court's attention to any specific evidence that would warrant greater mental limitations than those adopted by the Administrative Law Judge. So are you saying that if the ALJ had granted Kuykendall's application, that would have been a legal error? It would have been a different interpretation of the evidence. Exactly. Right? We have here, as in so many of these cases, a contention by the claimant that it must have been an error for the ALJ to rule for the Secretary. Well, the Commissioner. And a contention by the Commissioner that it would have been legal error to rule for the claimant. As if there were no set of cases in which the ALJ actually had a decision to make. But this looks like a case where the ALJ had a real decision to make. Absolutely. The claimant's not exactly healthy. No, absolutely not. Our contention, Judge Easterbrook, is that substantial evidence supports what the ALJ did here. Right. But what you were saying on your feet is that there's no evidence in support of the claimant. No. And that's not plausible. I'm certainly not contending that, Your Honor. We're simply saying that substantial evidence supports what the ALJ did. Right. That's the question we have to discuss. With regard to Dr. Platt's opinion, we would submit that the Administrative Law Judge thoroughly considered what Dr. Platt had to say. In his mental assessment of ability to do work-related activities, Dr. Platt offered no concrete explanation for his conclusions beyond simply stating that Mr. Kuykendall had depression or emotional difficulties. Now, while this may be true, the mere fact that Mr. Kuykendall had such conditions, and we do not dispute that he did, fails to support the conclusion that he would miss multiple days of work per month or be limited in his ability to work with others. As noted above, during his consultative examination with Dr. Dwyer, Mr. Kuykendall indicated that he experienced anxiety symptoms at times, but he admitted that those symptoms only lasted a few seconds before resolving. When Dr. Hirschberger asked Mr. Kuykendall about his symptoms, Mr. Kuykendall reported worrying about finances, but he identified no other concerns. Finally, Dr. Streich, who also performed a consultative examination, concluded that Mr. Kuykendall's symptom profile did not even merit a major depressive disorder diagnosis. Now, the Administrative Law Judge did not agree with that and found that the evidence did support such a diagnosis. In conclusion, Your Honors, we would ask that you find that this decision was supported by substantial evidence, and we ask for an affirmance. Thank you very much, Your Honor. Thank you, Mr. Hensley. Anything further, Mr. Forbes? Thank you very much, Your Honor. And I mean that. The ALJ does have a zone where they can weigh the evidence and reach a decision on either side. But in this case, there are parameters on how to weigh that evidence because the old treating physician rule applies. And the parameters are that you better have a really darn good reason to throw out a treating specialist, as we have here, who has a long history. The only significant evidence I think the other side has is that sometimes that treating specialist mentions that he concentrates during sessions. But that's within the therapeutic environment. And those sessions usually were 15 minutes at one time, and one were 60 minutes. That is not evidence, substantial evidence, that a person can concentrate in the two-hour increments required for unskilled work. And then finally, routine and simple instructions and tasks are primarily related to cognitive problems. That's why we have the Yerke and Crump case law. Because cognitive problems, cognitive deficiencies do not take into account almost always the ability to sustain the concentration, persistence, or pace throughout a work day, day after day. So the evidence is here. It is about as good as it gets for a claimant. A treating specialist with a long treatment history issuing opinion, like the one here, it's not usually written in the way us lawyers like to see things written. We like precision. But when it comes to doctors and specialists, this is pretty good. Thank you very much, counsel. The case is taken under advisement.